| | | |
|---|---|---|
| SHARLES JOHNSON, *et al.*, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 3:25-CV-593-KAC-DCP |
| | ) | |
| KRISTAN NICELY, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM AND ORDER**

This case is before the undersigned pursuant to 28 U.S.C. § 636 and the Rules of this Court on Plaintiffs' Application to Proceed in District Court Without Prepaying Fees or Costs ("Application") [Doc. 1] and Complaint [Doc. 1, 7, 8].[1] For the reasons more fully stated below, the Court **HOLDS IN ABEYANCE** Plaintiff's Application [**Doc. 1**].

Under the Prison Litigation Reform Act of 1995 ("PLRA"), the Court is required to screen complaints. 28 U.S.C. § 1915.[2] To accomplish this end, the Court must evaluate the litigant's indigence, but notwithstanding indigence, a court must dismiss a matter under 28 U.S.C. § 1915(e)(2)(B) if [it] determines that . . . the action . . . (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who

---

[1]   Plaintiffs filed their initial Complaint [Doc. 2] on December 8, 2025, and during the pendency of the screening process, they filed an Amended Complaint and a Motion for Leave to File Supplemental Allegations [Docs. 7, 8]. All submissions have been considered by the Court.

[2]   Despite the reference to prisoners, 28 U.S.C. § 1915 requires the Court to screen complaints filed by non-prisoners seeking in forma pauperis status *McGore v. Wrigglesworth*, 114 F. 3d 601, 608 (6th Cir. 1997) ("Unlike prisoner cases, complaints by non-prisoners are not subject to screening process required by § 1915A. The district court, however, must still screen the complaint under § 1915(e)(2)."), *overruled on other grounds*, *Jones v. Brock*, 549 U.S. 199 (2007).

is immune from such relief." To survive an initial review, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v Twombly*, 550 U.S.544, 570 (2007)).

Specifically, under Rule 8(a) of the Federal Rules of Civil Procedure, a pleading must provide:

> (1) a short and plain statement of the grounds for the court's jurisdiction . . .;
>
> (2) a short and plain statement of the claim showing that the pleading is entitled to relief; and
>
> (3) a demand for the relief sought, which may include relief in the alternative or different types of relief.

Fed. R. Civ. P. 8(a)(1)–(3). Otherwise, the complaint is subject to dismissal under Rule 12(b)(6) for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Courts also have a continuing duty to ensure that jurisdiction exists to hear the case. *Answers in Genesis, Inc. v. Creation Ministries Int'l, Ltd.*, 556 F.3d 459, 465 (6th Cir. 2009) ("[F]ederal courts have a duty to consider their subject matter jurisdiction in regard to every case and may raise the issue *sua sponte*." (citations omitted)). Courts liberally construe pro se pleadings filed in civil rights cases and hold them to a less stringent standard than formal pleadings drafted by lawyers. *Haines v. Kerner*, 404 U.S. 519, 520 (1972).

### A. Summary of Complaint

Plaintiffs name five Defendants in this matter: Kristan Nicely, Stephanie Auer, Cassandra White, Ashley Goins, and Janine Joy, who "are private individuals who acted jointly and knowingly to cause state-action violations by inducing unconstitutional police conduct" [Doc. 2 p. 3]. Plaintiffs represent that "[t]his action arises from a coordinated series of false reports, insinuations, and emergency calls made by Defendants Nicely, Auer, White, Goins, and Joy . . .

2

resulting in an unconstitutional and racially charged welfare-check response by the Knox County Sheriff's Office on October 26, 2025" [*Id.* at 7]. Plaintiffs state that these Defendants "implied that Mrs. Johnson was dead, missing, abused, or under coercive control, publicly and privately insinuated that Mr. Johnson murdered his wife, falsely claimed domestic abuse and danger to children, ignored Mrs. Johnson's direct statements that she was alive and safe, used emergency [services] as a weapon against a family they had never met, [and] acted under color of state law by directing police action based on falsehoods, gossip, projection, and emotional instability" [*Id.*].

Plaintiffs represent that "[t]he caller defendants communicated among themselves and shared unverified, contradictory, speculative, and false statements about Mrs. Johnson based solely on her protected speech on Facebook" and that none of them "possessed firsthand knowledge, personal observation, or factual information about Plaintiffs, their home, their marriage, or their safety" [Doc. 7 p. 7]. Plaintiffs submit that "[t]he callers jointly conveyed these false impressions to law enforcement with the shared objective of prompting a government intrusion into Plaintiffs' home" and their actions "resulted in the dispatch of armed deputies, the seizure of the Johnson home, the attempted separation of the parents, and the trauma inflicted onto their minor children" [*Id.*]. Plaintiffs contend that because "[t]he callers' coordinated misinformation caused the Sheriff's Office to act under color of state law," the callers were "transform[ed] into state actors for purposes of liability" [*Id.*].

Plaintiffs aver that "[t]hese false reports caused deputies to approach with a show-of-force strike on the door, attempt to separate the married Plaintiffs, place a foot inside the threshold without consent, refuse to identify themselves, and treat Mr. Johnson as a dangerous suspect solely because he is Black" [Doc. 2 p. 2]. As a result, Plaintiffs assert that "[t]he Johnson children . . . suffered extreme trauma, emotional distress, humiliation, fear, and moral injury" [*Id.*].

3

Plaintiffs note that "[a]t the time of the incident, the Knox County Sheriff's Office and Knox County Law Department had no written welfare-check policy, no guidelines for separation attempts, no threshold rules, no racial-bias protections, and no constitutional safeguards" [*Id.* at 4]. Plaintiffs contend that their family "suffered the exact constitutional harms caused by that policy vacuum" [*Id.*]. Further, Plaintiffs represent that "body-camera footage later revealed a racial whisper to the lead officer before the encounter started, stating, 'She's white ... he's Black,' which set the tone for the entire interaction and injected racial bias into the encounter" [Doc. 7 p. 13]. According to Plaintiffs, the "[d]eputies struck [their] door with a show-of-force maneuver before announcing themselves or knocking in a normal manner" and "ignored the ring camera on the door," as well as "immediately demanded Mrs. Johnson by name and repeatedly attempted to separate her from Mr. Johnson without reasonable suspicion, probable cause, or exigent circumstances" [*Id.*].

Plaintiffs allege a claim of civil conspiracy to interfere with civil rights under 42 U.S.C. §1985(3), as they contend Defendants "knowingly and willfully acted in concert to conspire to deprive Plaintiffs of their constitutional rights" [Doc. 7 p. 7]. They argue that Defendants' "conduct was motivated by animus toward Mrs. Johnson's protected free speech, her religious expression, and their own personal bias against her marriage or testimony" [*Id.*]. Plaintiffs further allege a claim of failure to prevent a civil rights conspiracy under 42 U.S.C. § 1986 and submit that Defendants knew "false and unverified statements were being made and repeated, had the ability to intervene, and deliberately failed to prevent the continuation of a civil rights conspiracy that deprived Plaintiffs of their constitutional rights" [*Id.* at 8]. Plaintiffs state that "[b]y choosing not to prevent the misinformation from continuing and expanding, the callers enabled the conspiracy

4

that directly caused law enforcement to seize Plaintiffs' home, attempt to separate the parents, and infringe upon the rights of their minor children" [*Id.*].

Under 42 U.S.C. § 1983, Plaintiffs allege violations of the Fourth and Fourteenth Amendment, defamation per se, false light, negligence and reckless disregard, intentional infliction of emotional distress, and loss of consortium [Doc. 2 p. 5]. Plaintiffs seek compensatory damages in the amount of $40,000,000, and punitive damages in the amount of $5,000,000 per Defendant [Doc. 2 p. 6]. Finally, Plaintiffs seek "[a] declaratory judgment that Defendants . . . violated Plaintiffs' Fourth and Fourteenth Amendment rights by inducing and participating in an unconstitutional welfare check through false reports, defamatory statements, and malicious insinuations, [a] declaration that Defendants' statements, implications, accusations, and omissions constitute defamation per se, defamation by insinuation, false light, actual malice and intentional infliction of emotional distress under Tennessee law," and "[a]n order requiring all Defendants to preserve and produce all communications, posts, messages, screenshots, Messenger threads, texts, recordings, CAD data, and any materials related to their involvement in the events described herein" [Doc. 7 p. 36].

**B.     Review**

Section 1983 allows a plaintiff to seek redress from state actors for "the deprivation of any rights, privileges, or immunities secured by the Constitution." 42 U.S.C. § 1983; *see also Nelson v. Campbell*, 541 U.S. 637, 643 (2004). To state a claim under § 1983, a plaintiff must allege (1) a deprivation of rights secured by the "Constitution and laws" of the United States and (2) that a defendant caused harm while acting under color of state law. *Adickes v. S.H. Kress & Co.*, 398 U.S.144, 150 (1970).

Starting with the Defendants, Plaintiffs only names private actors who cannot be held liable under § 1983. *See Rangel v. Rios*, No. 1:14-cv-61, 2014 WL 713032, at *4 (W.D. Mich. Feb. 24, 2024) ("Plaintiff may not proceed under section 1983 against a private party, 'no matter how discriminatory or wrongful the parties conduct'" (quoting *Tahfs v. Procter*, 316 F.3d 583, 590 (6th Cir. 2003)). Plaintiffs bear the burden of proving that the private actor acted under the color of state law in order to be considered a state actor and be held liable under § 1983. *See Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982). The Sixth Circuit recognizes three tests for determining whether private conduct is fairly attributable to the state: the public function test, the state compulsion test, and the nexus test.

> The public function test requires that the private entity exercise powers which are traditionally exclusively reserved to the state . . . . The state compulsion test requires proof that the state significantly encouraged or somehow coerced the private party, either overtly or covertly, to take a particular action so that the choice is really that of the state. Finally, the nexus test requires a sufficiently close relationship (i.e., through state regulation or contract) between the state and the private actor so that the action taken may be attributed to the state.

*Ellison v. Garbarino*, 48 F. 3d 192, 195 (6th Cir. 1995) (internal quotations marks and internal citations omitted).

Here, Plaintiffs contend that "private individuals who conspire with or intentionally misuse police authority are treated as state actors and are liable for the same constitutional violations carried out by officers" and that "[b]y initiating, directing, and influencing the police response through false emergency reports, they became joint participants with the Knox County Sheriff's Office" [Doc. 7 p. 6]. Plaintiffs further argue that "[t]he callers' coordinated misinformation caused the Sheriff's Office to act under color of state law, thereby transforming the callers into state actors for purposes of liability" [*Id.* at 7]. In their Supplemental Allegations, Plaintiffs posit that "[t]he coordinated caller activity, felony-level accusations triggering emergency response, dispatch-

6

directed separation, and deputies' operational reliance on the caller-supplied narrative plausibly demonstrate joint participation sufficient to satisfy" what they describe as "the joint-action standard under 42 U.S.C. § 1983" [Doc. 8-1 p. 3].

Such allegations based on Defendants' act of calling the police are insufficient to transform them into state actors for the purpose of alleging a § 1983 claim. "Allegations in a plaintiff's complaint that a private citizen-defendant acted corruptly in concert with a state official may be sufficient to make out a claim that, as to the action in question, the defendant is a state actor." *Tahfs v. Proctor*, 316 F.3d 584, 591 (6th Cir. 2003). Here, however, Plaintiffs do not allege that the Defendants conspired with the Knox County Sheriff's Office, but rather that the "Defendants acted jointly and with reckless disregard for truth and negligence, directly causing state actors (the Knox County Sheriff's Office) to treat Mr. Johnson as a violent suspect" [*Id.* at 13]. These allegations do not plausibly establish that Defendants acted under color of state law or otherwise became state actors under the three outlined exceptions above.

Plaintiffs also assert a conspiracy claim under 42 U.S.C. § 1985(3), alleging that Defendants "knowingly and willfully acted in concert to conspire to deprive Plaintiffs of their constitutional rights" [Doc. 7 p. 7]. This statute prohibits two or more persons conspiring to deprive "any persons or class of persons of the equal protections of the laws, or of equal privileges and immunities under the laws." 42 U.S.C. § 1985(3). "The Supreme Court has emphasized that § 1985(3) requires *inter alia* that a claimant establish 'some racial or perhaps otherwise class-based, invidiously discriminatory animus.'" *Bartell v. Lohiser*, 215 F.3d 550, 559–60 (6th Cir. 2000) (quoting *United Brotherhood of Carpenters & Joiners of America v. Scott*, 463 U.S. 825, 829 (1983)). Accordingly, "§ 1985(3) only covers conspiracies against: 1) classes who receive heightened protection under the Equal Protection Clause; and 2) 'those individuals who join

7

together as a class for the purpose of asserting certain fundamental rights.'" *Id.* (quoting *Browder v. Tipton*, 630 F.2d 1149, 1150 (6th Cir. 1980)).

Here, Plaintiffs allege that "[t]he callers' conduct was motivated by animus toward Mrs. Johnson's protected free speech, her religious expression, and their own personal bias against her marriage or testimony" [Doc. 7 p. 7]. Plaintiffs further argue that the officers' statements "'She's white . . . he's Black,' combined with Defendants' false reports primed deputies to treat Mr. Johnson as presumptively dangerous based on race and false insinuations of homicide and abuse" [*Id.* at 24]. To allege a claim under § 1985(3), plaintiffs "must come forward with specific circumstantial evidence that each member of the alleged conspiracy shared the same conspiratorial objective.'" *Pahssen v. Merrill Cmty. Sch. Dist.*, 668 F.3d 356, 368 (6th Cir. 2012) (quoting *Hinkle v. City of Clarksburg, W. Va.*, 81 F.3d 416, 421 (4th Cir. 2996)). For this reason, "conspiracy claims must be pled with some degree of specificity . . . vague and conclusory allegations unsupported by material facts will not be sufficient to state such a claim." *Gutierrez v. Lynch*, 826 F.2d 1534, 1538–39 (6th Cir. 1987). The Court finds that Plaintiffs have failed to allege sufficient facts to support any specific agreement among Defendants to engage in any concerted action against Plaintiffs and thus, their vague and conclusory allegations of conspiracy are not sufficient to state a colorable claim under § 1958(3).

And because the Court finds that "Plaintiff[s] [have] no viable claim under 42 U.S.C. § 1985, [they] also [have] no claim under 42 U.S.C. § 1986." *Kimbrough v. Hercules Drawn Steel Corp.*, No. 26-10601, 2026 WL 593107, at *2 (E.D. Mich. Mar. 2, 2026). "Section 1986 establishes a cause of action against anyone, who has knowledge of a conspiracy under § 1985, and having power to prevent or aid in preventing the commission of the same, neglects or refuses so to do." *Radvansky v. City of Olmstead Falls*, 395 F.3d 291, 314 (6th Cir. 2005) (internal quotation marks

8

omitted). If the Court finds that Plaintiffs have failed to state a claim under § 1985, it necessarily follows that there can be no liability under § 1986. *Id.* at 315; *Bass v. Robinson*, 167 F.3d 1041, 1051 n.5 (6th Cir.1999).

Jurisdiction over Plaintiffs' state law claims for defamation, false light, negligence and reckless disregard, intentional infliction of emotional distress, and loss of consortium depends on whether the Court finds Plaintiffs have properly alleged claims under its original jurisdiction. Under 28 U.S.C. § 1367, the Court may decline to exercise supplemental jurisdiction when the Court "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). The United States Court of Appeals for the Sixth Circuit has held that "[i]f the federal claims are dismissed before trial, the state claims generally should be dismissed as well." *Brooks v. Rothe*, 577 F.3d 701, 709 (6th Cir. 2009) (internal quotations omitted).

Instead of recommending dismissal, the Court will allow Plaintiffs an opportunity to amend his Complaint in light of their pro se status. In their amended complaint, Plaintiffs shall provide a short and plain statement of the relevant facts supporting their claims. *See* Fed. R. Civ. P. 8(a). Plaintiffs' amended complaint should provide, to the extent applicable, the following details:

a) the names and titles of all [defendants if known];

b) . . . all relevant events, stating the facts that support Plaintiff[s'] case including what each defendant did or failed to do;

c) . . . the dates and times of each relevant event or, if not known, the approximate date and time of each relevant event;

d) . . . the location where each relevant event occurred;

e) . . . how each defendant's acts or omissions violated Plaintiff[s'] rights and . . . the injuries Plaintiff[s] suffered; and

f) . . . what relief Plaintiff[s] seek[] from the Court, such as money damages, injunctive relief, or declaratory relief.

9

*Polite v. VIP Cmty. Servs.*, No. 20-CV-7631, 2020 WL 6064297, at *3 (S.D.N.Y. Oct. 13, 2020). "Because Plaintiff[s'] amended complaint will completely replace, not supplement, the original complaint, any facts or claims that Plaintiff[s] wish[] to maintain must be included in the amended complaint." *Id*.; *see also* E.D. Tenn. L.R. 15.1 (explaining that an amended complaint cannot incorporate the original complaint by reference). Plaintiffs **SHALL** file their amended complaint on or before **August 14, 2026.**

**IT IS SO ORDERED.**

ENTER:

Debra C. Poplin
United States Magistrate Judge

10